IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

MICHAEL S.,[1]                                    No. 2:24-cv-00640-YY

          Plaintiff,                          OPINION AND ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

YOU, Magistrate Judge.

     Plaintiff Michael S. seeks judicial review of the Social Security Commissioner's final

decision denying his application for disability insurance benefits ("DIB") Title II of the Social

Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set

forth below, the Commissioner's decision is REVERSED and REMANDED for further

proceedings.

## PROCEDURAL HISTORY

     Plaintiff filed an application for disability insurance benefits on January 29, 2021,

alleging a disability onset date of February 25, 2020. Tr. 72. The Commissioner denied

plaintiff's claims on July 1, 2021, and again upon reconsideration on May 12, 2022. Tr. 88–89,

113–14. Plaintiff filed a written request for a hearing, and a hearing was held before

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

Administrative Law Judge Deborah Van Vleck on July 5, 2023. Tr. 29–70. The ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 15–24. The Appeals Council denied plaintiff's request for review on February 16, 2024. Tr. 1–6. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 25, 2020, the alleged onset date. Tr. 17. At step two, the ALJ found that plaintiff had the following severe, medically determinable impairments: a mental impairment diagnosed to include bipolar II disorder, anxiety disorder, and personality disorder, with mixed personality features. Tr. 17. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. The ALJ assessed plaintiff's residual functional capacity ("RFC"), as follows:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Due to medication effects, the claimant can occasionally climb ramps and stairs but is not able to climb ladders, ropes, and scaffolds. The claimant cannot work at unprotected heights or around hazardous moving machinery. The claimant should not be required to operate a motor vehicle as part of his work tasks. The claimant can perform simple, routine, and repetitive work tasks that are not production paced, such as assembly line work. The claimant is able to use judgment consistent with that level of work. The claimant can have occasional contact with supervisors and coworkers, but no contact with the public.

Tr. 19.

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. Tr. 22. At step five, the ALJ determined that transferability of job skills was "not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is not disabled whether or not [he] has transferable job skills." Tr. 23. The ALJ further found that considering plaintiff's age, education, work experience, and

residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as prep cook, grounds keeping, and auto detailer. Tr. 23. The ALJ therefore found that plaintiff was not disabled. Tr. 24.

## DISCUSSION

Plaintiff claims that the ALJ (1) failed to properly evaluate the medical opinions of Brad Levitt, Psy.D., and Olurotimi ("Tim") Ashaye, M.D., (2) improperly rejected plaintiff's subjective symptom testimony, (3) improperly addressed lay witness testimony, and (4) failed to include all limitations in the hypotheticals posed to the vocational expert. Pl. Br. 10, ECF 9.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p.

*See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

In 2018, plaintiff was hospitalized for being depressed and suicidal. Tr. 419. According to admissions records, plaintiff "was thought to be a danger to himself." *Id.* Plaintiff previously attempted suicide with pills in 2012. Tr. 414. Plaintiff had a "[s]trong family history psychiatric illness" and was sexually abused as a child. Tr. 420.

Plaintiff resigned from his job in February 2020 due to medical reasons. Tr. 48, 443. At the time, plaintiff's psychiatrist, Dr. Ashaye, opined that plaintiff was "still struggling" and "advised him to quit working for now until his mental health is stable." Tr. 474. Plaintiff had worked at 10 jobs over the prior 12 years, and left these jobs for similar reasons, i.e., a "rapid buildup of anxiety over time." Tr. 65; *see* Tr. 23-34 (employment history). "The longer [plaintiff] was there[,] the anxiety just kept building." Tr. 65. Plaintiff described a pattern where he could "handle the stress for a time" but "after awhile [*sic*] it just sort of builds up and the anxiety gets to a point where [he was] starting to take more and more medication and pretty soon [he] just can't do the job anymore." Tr. 50.

At the administrative hearing, plaintiff explained that he has increased anxiety when he is around people, even when he is not interacting with them. Tr. 40-41. While plaintiff has always

experienced difficulty being in large groups of people, his anxiety had become more severe in the last six or eight years. *Id.* Plaintiff was taking several prescribed medications, including lamotrigine, Abilify, Puran, trazodone, lorazepam, and Zyprexa. Tr. 57. He claimed his medication caused heavy sedation, as well as brain fog and memory and cognitive issues. Tr. 43, 58.

Plaintiff told the ALJ that he was sometimes too depressed to get out of bed. Tr. 60. Plaintiff described having "moderately bad" days three to five days a week, and while he experienced one or two good days in a month, he self-sabotaged those days "pretty quickly." Tr. 64. He explained that "if even a small event happens it can send the anxiety off like a bottle rocket[.]" Tr. 65.

When asked about his daily activities, plaintiff stated that he did not grocery shop because he "just can't deal with" people or the store. Tr. 61. He prepared meals "[m]aybe one or two days a month" because the pressure of having to do it was too difficult or he forgot. Tr. 61. Plaintiff did not regularly perform chores in or around the house, except for using the riding lawn mower intermittently and taking the dog for a walk once or twice a month. Tr. 60–64. Plaintiff had no friends or hobbies, and spent 20 minutes a day on his computer. Tr. 63-64. He did not travel to see his two daughters or grandchildren. Tr. 63. When they visited him, he was able to be around them on the first day and then the situation became too much to handle, so he "had to take meds to deal with it and . . . the last several days [he] pretty much wasn't around them." Tr. 63.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 20. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence, and

limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 20–22.

### A.    Treatment and Medication

An ALJ may discount a claimant's mental health-related symptom testimony because he improved with treatment. *Niemi v. Saul,* 829 F. App'x 831, 832-33 (9th Cir. 2020) (holding that the ALJ did not err in discounting the claimant's symptom testimony and noting that the ALJ observed that the claimant's "mental health challenges appeared to improve with counseling and medication"). However, discounting a claimant's mental health related symptom testimony based on evidence of improvement may still result in harmful error. The Ninth Circuit cautions that when "discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. That is, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).

The ALJ discredited plaintiff's subjective symptom testimony on the basis that records from 2020 "show that [plaintiff] has generally responded well to his treatment." Tr. 20. In support, the ALJ cited an April 2020 psychiatric visit where plaintiff "noted that he was doing well and that his therapy sessions had been very helpful" and "reported that his *symptoms were much better controlled since resigning from his job as advised by his therapist*." Tr. 20 (citing 442) (emphasis added). Indeed, plaintiff had stopped working just two months before, in February 2020, after his psychiatrist advised him to "quit working" because of his mental health condition. Tr. 474. Under the circumstances, this does not constitute a clear and convincing basis

to discount plaintiff's subjective symptom testimony. As plaintiff's hearing-level attorney observed, if "[q]uitting his job made him feel better, going back would logically cause the opposite to happen." Tr. 402. Other courts have found similar reasoning by the ALJ to be flawed. *See Auapaau v. O'Malley*, No. CV 24-00176 MWJS-WRP, 2024 WL 4574152, at *2 (D. Haw. Oct. 24, 2024) (finding the ALJ's "decision altogether failed to address a key component of Auapaau's symptom testimony: that his seizure symptoms have improved at least in part because he followed his doctor's instructions and stopped working in 2020"); *Hill v. Colvin*, No. 2:15-CV-03542 (VEB), 2016 WL 3063863, at *10 (C.D. Cal. May 31, 2016) (observing "the ALJ did not account for the fact that Plaintiff experienced some symptom improvement only after he stopped working (his symptoms were worsening while he worked) and, even then, Plaintiff's symptoms have only 'improved' to the extent that he remains in his home most days, in relative isolation, engaging in limited activities, and experiencing 3 to 5 panic attacks per day").

The ALJ also observed that while plaintiff "occasionally required an adjustment to his medications," "even during these periods where his medications were less effective, mental status examinations have shown mostly benign signs." Tr. 20. In support, the ALJ cited to a record from a Telehealth visit on July 12, 2021, at which Dr. Ashaye increased plaintiff's lithium dosage. Tr. 20 (citing 462). In the chart note, Dr. Ashaye observed that plaintiff sounded cooperative and pleasant and was generally cognitively intact. Tr. 462. However, this was not an in-person appointment but rather a telephone appointment that took place during the pandemic, and Dr. Ashaye otherwise noted that plaintiff reported continued mood instability and cognitive side effects. The ALJ cited to another chart note from February 2023 in which Dr. Ashaye reported that plaintiff's mood appeared fairly stable, he was calm and cooperative, he was generally cognitively intact, and he had no new complaints or concerns. Tr. 480. Importantly, Dr.

Ashaye again noted that plaintiff "has been doing better *since he has not been working*." Tr. 480 (emphasis added). Dr. Ashaye further observed that plaintiff "clearly is thankful for the fact that he does not have to face stressors at work every day" and "even when his grandkids come around, he feels extremely stressed and has to take some time out." Tr. 480. This is consistent with plaintiff' testimony that the stressors of a work environment have prevented him from maintaining full-time employment. Additionally, the ALJ neglected to address plaintiff's May 9, 2022 appointment during which Dr. Ashaye adjusted plaintiff's medications and plaintiff did not "show mostly benign signs"; rather, plaintiff seemed withdrawn and depressed, had a blunted affect, and was "still struggling with lots of anxiety and some depressive symptoms," as well as rapid-cycling mood swings. Tr. 484. In sum, the ALJ did not provide clear and convincing reasons for discounting plaintiff's subjective symptoms complaints based on improvement from treatment and medication.

### B.    Objective Medical Evidence

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as

undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

The ALJ discounted plaintiff's complaints because they were "not corroborated by the medical record" and plaintiff "generally noted a positive response to his medications without significant side effects." Tr. 21. The ALJ cited an August 2021 Telehealth visit during which plaintiff reported that lithium appeared to be working and he had much less anxiety. Tr. 464. The ALJ also cited a February 2023 chart note that noted Abilify seemed to have helped with plaintiff's mood, plaintiff had no side effects, and he exhibited cooperative behavior, coherent speech, better mood, no evidence of psychosis, and intact cognition. Tr. 480. But in this chart note, Dr. Ashaye again recognizes that plaintiff "has been doing better since he has not been working." Tr. 480. Plaintiff's improvement with treatment after he left the work environment is not necessarily indicative of his ability to return to full-time employment, considering that plaintiff's mental health symptoms have "waxed and waned" in the course of treatment and the gravity of plaintiff's mental health condition, including a recommendation by his psychiatrist to "quit working" in 2020, a history of 10 failed jobs in a 12-year period, numerous prescribed medications, a hospitalization in 2018 for suicidal issues, and a prior suicide attempt.

## C.   Activities

The ALJ cited to plaintiff's activities to show his complaints were not consistent with his ability to perform simple, routine tasks with minimal social interactions. Tr. 20-21. The ALJ wrote that plaintiff "was engaged to work as a substitute teacher prior to the pandemic but left his job due to concerns about COVID rather than his impairments." Tr. 21 (citing Tr. 441). In the July 13, 2020 chart note that the ALJ cites, Dr. Ashaye stated that plaintiff "was going to do some substitute teaching, but because of the COVID-19 outbreak, he decided to give that a break

for now." Tr. 441. Notably, substitute teaching is often flexible, part-time work that is performed

on an on-call basis. This does not show that plaintiff can engage in full-time work. Moreover,

there is no evidence in the record that plaintiff had "left his job" as a substitute teacher before the

pandemic. *See* Tr. 232 (indicating plaintiff worked at Saint Alphonsus Medical center in 2020);

Tr. 402 (noting that plaintiff had not worked as a substitute teacher in the ten years before the

pandemic and had never quit a job due to COVID).

The ALJ also cited to plaintiff's work on a "farm." Tr. 21. At the hearing, plaintiff

explained that he did not work on a farm but was referring to the property he lived on. Tr. 41.

Plaintiff also clarified that the only thing growing on the property was milkweeds and goat

heads, except for a small garden that his wife maintained. Tr. 62. Plaintiff sometimes used a

riding lawn mower to mow the lawn around the house, but his father-in-law took care of the rest

of the property. Tr. 62. Thus, the ALJ erred in discounting plaintiff's subjective symptom

testimony based on these "activities."

## II.    Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017,

ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title

XVI claims Under these regulations, ALJs no longer "weigh" medical opinions, but rather

determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that

end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed.

Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner

evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3)

relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence

showing a medical source has familiarity with the other evidence in the claim or an

understanding of our disability program's policies and evidentiary requirements." 20 C.F.R.

§§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are "the most important factors" in the

evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to

which a medical source supports the medical opinion by explaining the "relevant . . .

objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20

C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is

"consistent . . . with the evidence from other medical sources and nonmedical sources in the

claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain

how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a),

(b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7

(D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were

considered, as appropriate, including relationship with the claimant (length, purpose, and extent

of treatment relationship; frequency of examination); whether there is an examining relationship;

specialization; and other factors, such as familiarity with other evidence in the claim file or

understanding of the Social Security disability program's policies and evidentiary requirements."

*Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D.

Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other

secondary medical factors [if] they find that two or more medical opinions about the same issue

are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL

6363839 at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

### A.    Brad Levitt, PsyD

At the request of the Social Security Administration, Brad Levitt, PsyD, conducted a psychological evaluation of plaintiff on June 28, 2021, and prepared a report. Tr. 456. The ALJ found Dr. Levitt's opinion unpersuasive because plaintiff had a "positive response" to medications and his mental status examinations "generally documented normal signs." Tr. 22. The ALJ cited to Dr. Ashaye's records from 2018 to 2023 in support of this conclusion. In other words, the ALJ relied on the same records that the ALJ used to discount plaintiff's subjective symptom testimony. On remand, the ALJ shall reevaluate Dr. Levitt's opinion in a manner that is consistent with this decision.

### B.    Dr. Olurotimi Ashaye

Dr. Ashaye provided a medical opinion on June 27, 2023. Tr. 492. The ALJ discounted Dr. Ashaye's opinion because the "checklist-style form" he used did not include any explanation regarding functional limitations, and the limitations were inconsistent with Dr. Ashaye's medical records, i.e., the same records that the ALJ used to discount plaintiff's subjective symptom testimony. Tr. 22. On remand, the ALJ shall reevaluate Dr. Ashaye's opinion consistently with this decision.

### III.    Lay Witness Testimony

The ALJ made no mention of the lay witness testimony, and plaintiff argues that the ALJ failed to provide germane reasons to reject the lay witness testimony. "The majority of district courts in this circuit . . . conclude that the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony." *Donna B.S. v. O'Malley*, No. 6:22-CV-1571-SI, 2024 WL 3534431, at *7 (D. Or. July 25, 2024) (citing *Christopher M. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L.S. v. Kijakazi*, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023); *Sharon W. v. Kijakazi*, 2023 WL 246391, at *8 (D. Idaho Jan. 18, 2023)). On remand, the ALJ shall evaluate the lay witness testimony by plaintiff's wife in a manner consistent with this decision.

### IV.    Step Five

Plaintiff argues the ALJ erred at step five by failing to include limitations from plaintiff's testimony, the medical opinions, and the lay witness testimony in the proposed hypotheticals to the vocational expert (VE). It is unnecessary to reach this issue as the case is being remanded.

### V.    Remand

When a court determines the Commissioner erred in denying benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler*, 775 F.3d at 1099 (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or the immediate payment of benefits, the Ninth Circuit employs the following "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has

been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. If all three requisites are met, the court may remand for benefits. *Id.* However, even if all of the requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Id.* at 1021.

The first prong of the credit-as-true inquiry is met because the ALJ failed to provide legally sufficient reasons to reject plaintiff's subjective symptom testimony. However, the court cannot conclude that further proceedings would serve no useful purpose. On remand, the ALJ may be able to articulate lawful reasons to discredit plaintiff's subjective symptom testimony and reject the medical opinion and lay witness testimony, or the ALJ may decide that plaintiff is entitled to benefits. Therefore, this case is reversed and remanded for further proceedings consistent with this decision.

## CONCLUSION

The Commissioner's decision is REVERSED AND REMANDED for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

DATED June 4, 2025.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge

15 – OPINION AND ORDER